OPINION
{¶ 1} Plaintiffs-appellants, James E. Lanham, and his four children, appeal from a decision by the Clermont County Court of Common Pleas granting summary judgment against them and in favor of defendants-appellees, Franklin Township, its trustees and an employee, with respect to appellants' complaint, alleging, among other things, that appellees caused or allowed the body of a non-family member to be interred in appellants' family burial lot.
 {¶ 2} The Sewanie Cemetery is located in Franklin Township, in Clermont County, Ohio. Farmer Barger, Marcus Taulbee and Rick Jennings are members of the Franklin Township Board of Trustees. Charles H. McIntyre is the owner and director of the Charles H. McIntyre Funeral Home, located in Franklin Township. Since 1984, McIntyre has been the Sewanie Cemetery's sexton.[1] His duties have included arranging all burials held at the cemetery, selling the cemetery's burial lots, and maintaining the cemetery's deed book.
 {¶ 3} In July 1981, Gaylord and Helen Lanham purchased burial lot No. 234 in the Sewanie Cemetery.[2] The burial lot was a "full lot," meaning it was capable of holding eight graves. Gaylord and Helen Lanham subsequently passed away, and both were interred in Lot No. 234. All rights in the burial lot passed to their son, James E. Lanham. In 1993, Lanham's wife passed away, and she was buried in Lot No. 234.
 {¶ 4} Lot No. 234 is bordered on one side by Lot No. 238. One-quarter of Lot No. 238 was owned by Alma Bailey. In November 2000, Bailey passed away, and was ostensibly buried in her portion of Lot No. 238.
 {¶ 5} In February 2001, Lanham, while visiting his wife's grave, discovered that someone had moved the corner markers of his family's burial lot, thereby altering its boundaries. Lanham determined from his own observations and measurements that Bailey's vault is on the Lanham family burial lot by at least 28 inches.
 {¶ 6} In April 2001, Lanham and his four children, Sheila Dufau, Denise R. Iker, Christopher S. Lanham and James H. Lanham (hereinafter, referred to collectively as "appellants") brought suit against Franklin Township; Trustees Barger, Taulbee and Jennings; and Funeral Director McIntyre (hereinafter, referred to collectively as "appellees"), regarding Bailey's alleged interring in appellants' family burial lot. Appellants brought a claim pursuant to Section 1983, Title 42 of the U.S. Code, arguing that appellees conspired to deprive them of their rights and privileges secured by the Fourteenth Amendment to the United States Constitution. Appellants also brought claims for intentional infliction of emotional distress, obstruction of justice, civil conspiracy, trespass, nonfeasance, negligence, criminal behavior for violating R.C.2909.05(C),[3] and a taxpayer derivative action. Appellees answered appellants' complaint by alleging that, among other things, they were entitled to the defense of sovereign immunity, pursuant to R.C. Chapter 2744.
 {¶ 7} On January 16, 2002, McIntyre moved for summary judgment with respect to appellants' claims. On January 28, 2002, Franklin Township and the township's trustees, Barger, Taulbee, and Jennings also moved for summary judgment with respect to appellants' claims. Appellees argued, among other things, that Alma Bailey was not buried on appellants' burial lot, and that, in any event, there was sufficient room for another grave between that of Lanham's wife and Alma Bailey's. After appellants responded to appellees' summary judgment motions, the trial court, on June 11, 2002, granted summary judgment to appellees.
 {¶ 8} On July 9, 2002, appellants moved for leave to amend their complaint to state a cause of action for breach of contract. The trial court denied the motion.
 {¶ 9} Appellants appeal from the trial court's decision granting summary judgment in appellees' favor, raising four assignments of error, all of which state:
 {¶ 10} "The trial court erred to the prejudice of plaintiff-apellants by granting defendant-appellees' motion for summary judgment."
 {¶ 11} In their first assignment of error, appellants argue that the trial court erred in granting summary judgment to appellees because their family had a contract with appellees regarding their family burial lot, and appellees breached that contract by allowing a non-family member to be buried in that lot. Appellants further assert that appellees' breach of contract is not subject to the defense of governmental immunity pursuant to R.C. Chapter 2744.
 {¶ 12} A trial court may grant summary judgment when (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Harless v. Willis DayWarehousing Co. (1976), 54 Ohio St.2d 64, 66. "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element[s] of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107.
 {¶ 13} Appellees acknowledged during oral arguments that the defense of governmental immunity is not available on contract claims. However, appellants did not raise a breach of contract claim against appellees in their complaint. A cause of action or theory of recovery not raised in the trial court cannot be raised for the first time on appeal. See, e.g., Poluse v. Youngstown (1999), 135 Ohio App.3d 720, 729.[4]
 {¶ 14} In light of the foregoing, appellants' first assignment of error is overruled.
 {¶ 15} In their second assignment of error, appellants argue that the trial court erred in granting summary judgment to appellees on their tort claims on the basis of governmental immunity, pursuant to R.C. Chapter 2744. First, appellants argue that Franklin Township and its trustees are not entitled to immunity pursuant to R.C. 2744.02 because their operation of the Sewanie Cemetery was not a "governmental function," since the trustees neither operated the cemetery themselves nor appointed three directors to run the cemetery as is required, according to appellants, by R.C. 517.20. We disagree with this argument.
 {¶ 16} R.C. 2744.02(A)(1) states:
 {¶ 17} "For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 18} Appellants have not argued that any of the circumstances set forth in R.C. 2744.02(B), which would render the township liable in a tort action, are applicable here. Furthermore, "[t]he operation of a township cemetery is a governmental function pursuant to R.C. Chapter 2744[.]" 1999 Ohio Atty.Gen.Ops. No. 99-047. Contrary to what appellants argue, R.C. 517.20 does not mandate that a board of township trustees either appoint three directors to run a township cemetery or operate the cemetery themselves. R.C. 517.20 provides in relevant part that "[t]he board of township trustees may appoint three directors to take charge of any cemetery in the township, the control of which is vested in such board." (Emphasis added.) R.C. 517.20. If the General Assembly had intended that a township's trustees not delegate the operation of a township cemetery to someone other than three directors, it could have plainly done so.
 {¶ 19} Second, appellants argue that the trustees were not entitled to immunity as individuals pursuant to R.C. 2744.03, because they were "reckless" in operating the cemetery through McIntyre, rather than appoint three directors to run the cemetery, which appellants assert is required by R.C. 517.20. However, for the reasons we have set forth with respect to appellants' preceding argument, it cannot be said that appellees were reckless in failing to appoint three directors to run the cemetery, since they were not required to do so under R.C. 517.20. Furthermore, appellants presented no evidence showing that the township trustees were reckless in delegating operation of the Sewanie Cemetery to McIntyre. At best, appellees' actions in operating the cemetery were negligent, but something more than negligence is needed to establish recklessness. See Thompson v. McNeill (1990), 53 Ohio St.3d 102,104-105, citing the Restatement of Torts 2d (1965), at 587, Section 500.
 {¶ 20} Finally, appellants argue that McIntyre is not entitled to immunity because he was not shown to be a township employee, but only a volunteer. We also disagree with this argument.
 {¶ 21} R.C. 2744.01(B) defines "employee" in relevant part as "an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision." A "volunteer" is defined in relevant part as "a person who, without an employer's assent and without any justificationfrom legitimate personal interest, helps an employee in the performance of the employer's business." (Emphasis added.) Black's Law Dictionary (7th Ed. 1999) 1570.
 {¶ 22} There is no question that McIntyre did not perform services for the Sewanie Cemetery as a volunteer. The uncontroverted evidence showed that McIntyre acted with the assent of the Franklin Township Board of Trustees, and that he had a legitimate personal interest in acting as sexton for the Sewanie Cemetery. McIntyre performed the duties of the cemetery's sexton as an adjunct to his funeral business. Even when the evidence is viewed in a light most favorable to appellants, there is no question that McIntyre was an "employee" of Franklin Township, as that word is defined by R.C. 2744.01(B), and therefore was entitled to immunity under R.C. Chapter 2744.
 {¶ 23} Appellants' second assignment of error is overruled.
 {¶ 24} In their third assignment of error, appellants argue that the trial court erred in granting summary judgment to appellees on appellants' Section 1983 claim. We disagree with this argument.
 {¶ 25} Section 1983, Title 42, U.S. Code provides in relevant part:
 {¶ 26} "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." To establish a Section 1983 claim, a plaintiff must show that (1) the conduct in question was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of rights, privileges or immunities secured by the United States Constitution or other federal law. 1946 St. Clair Corp. v. Cleveland (1990), 49 Ohio St.3d 33, 34.
 {¶ 27} In a Section 1983 claim, there is a significant distinction to be drawn between deprivation of a substantive right and a purely economic interest. Id. at 35. Where the right asserted is violation of a constitutional right, such as the right to free speech under theFirst Amendment or the right to be free from unreasonable search and seizures under the Fourth Amendment, a Section 1983 action is available regardless of the existence of adequate state remedies. Id., citing Cooperman v.Univ. Surgical Assoc., Inc. (1987), 32 Ohio St.3d 191, 199. However, where the right asserted is based upon the deprivation of a property interest alone, the constitutional right invoked is the procedural due process right to notice and hearing. 1946 St. Clair Corp. at 35, citingHudson v. Palmer (1984), 468 U.S. 517, 530-537, 104 S.Ct. 3194. When the right asserted involves a property interest, "the Constitution demands only that the challenging party be given a meaningful opportunity to be heard." 1946 St. Clair Corp. at 35, citing Parratt v. Taylor (1981),451 U.S. 527, 543-544, 101 S.Ct. 1908. Where the state provides adequate post-deprivation remedies for unauthorized intentional property deprivations, the state has provided all the process that is due under the Fourteenth Amendment to the United States Constitution. 1946 St.Clair Corp. at 35. Therefore, in order to assert a Section 1983 claim for deprivation without due process of law of a purely economic interest, a plaintiff must allege and prove the inadequacy of state remedies. 1946St. Clair Corp. at 33, syllabus.
 {¶ 28} Appellants never alleged in their complaint that state remedies were inadequate to compensate them for any damages they allegedly sustained as a result of appellees' acts or omissions. Furthermore, appellants never offered any proof that the state remedies available to them were inadequate. Appellants argue that because the trial court denied their motion to amend their complaint, they "were barred from any attempt to attack R.C. 2744.03 as being an inadequate process under the circumstances." However, appellants did not move to amend their complaint until after the trial court had issued a decision granting appellees' motion for summary judgment.
 {¶ 29} Finally, appellants did have a remedy available to them under the circumstances of this case in the form of a breach of contract action against appellees. In such an action, appellants could have requested, among other things, specific performance of the contract, including that Bailey be interred outside the family's burial lot. Appellants, however, failed to pursue that avenue of recovery in a timely manner.
 {¶ 30} Appellants' third assignment of error is overruled.
 {¶ 31} In their fourth assignment of error, appellants argue that the trial court erred by rendering summary judgment in appellees' favor without addressing appellants' taxpayer derivative action set forth in their complaint's ninth claim for relief. We agree with this argument.
 {¶ 32} Appellants' complaint states in relevant part:
 {¶ 33} "XII. NINTH CLAIM — TAXPAYER DERIVATIVE ACTION
 {¶ 34} "Plaintiffs James E. Lanham, Christopher S. Lanham and James H. Lanham are taxpaying residents of Franklin Township and bring this action as such in order to insure compliance with the law and to protect their interests as well as those of other citizens who may find themselves similarly situated."
 {¶ 35} In their prayer for relief, appellants requested the trial court to award them injunctive relief ordering the Franklin Township Board of Trustees to (1) survey the Sewanie Cemetery; (2) determine as precisely as possible the location of every casket, vault or tomb; (3) provide every plot owner, or person having any ownership interest in any plot, a map and written agreement that identifies and unconditionally guarantees to the owner the specific location of their plot; and (4) specifically comply with all rules, regulations and laws pertaining to the operation of a township cemetery within the State of Ohio.
 {¶ 36} In rendering summary judgment in appellees' favor, the trial court failed to address appellants' taxpayer derivative action set forth in their complaint's ninth claim for relief. This failure constitutes reversible error. A party moving for summary judgment has the burden of demonstrating the absence of a genuine issue of material fact "with respect to every essential issue of each count in the complaint[.]"Dresher, 75 Ohio St.3d at 294, 1996-Ohio-107, quoting Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, 114-115, quoting Massaro v. Vernitron Corp.
(D.Mass. 1983), 559 F. Supp. 1068, citing Mack v. Cape Elizabeth SchoolBd. (C.A.1, 1977), 553 F.2d 720, 722. If the party moving for summary judgment fails to meet this initial burden, the motion for summary judgment must be denied. Dresher at 293.
 {¶ 37} Here, appellees' motions for summary judgment never mentioned the taxpayer derivative action set forth in appellants' complaint. Consequently, appellees never specifically pointed to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrated that appellants had no evidence to support their taxpayer derivative action. Indeed, appellees never presented any argument, let alone any evidence, in support of rendering summary judgment against appellants with respect to their taxpayer derivative action.
 {¶ 38} Because appellees failed to satisfy their initial burden to provide Civ.R. 56(C) evidence with respect to appellants' taxpayer derivative action, appellants never had a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial regarding that claim. Dresher. Under these circumstances, appellees' motions for summary judgment should have been denied with respect to appellants' taxpayer derivative action. Id.
 {¶ 39} McIntyre argues that while appellants' ninth claim in their complaint may be styled a "claim," it is, in reality, nothing more than appellants' prayer for relief. We disagree with this contention. Appellants' ninth claim for relief clearly sets forth a taxpayer derivative action. Appellants' complaint also sets forth a separate prayer for relief. Appellees and the trial court erred by failing to address this part of appellants' complaint in the summary judgment proceedings.
 {¶ 40} Franklin Township and the township's trustees argue that the trial court did not need to address the merits of each state law claim raised by appellants because the township and its trustees are entitled to immunity from suit with respect to those claims, and appellants have failed to establish issues of fact necessary to raise a jury question with respect to them.
 {¶ 41} However, the township and its trustees have cited no authority for the proposition that R.C. Chapter 2744 provides governmental subdivisions and their employees with immunity from taxpayer suits, nor do we know of any. Indeed, if it did, there could never be a taxpayer action against a political subdivision of this state. Furthermore, the township and its trustees never notified the trial court of the basis for granting them summary judgment with respect to appellants' taxpayer derivative action, nor satisfied their burden to point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrated that appellants had no evidence to support their taxpayer derivative action. Because appellees never addressed the merits of appellants' taxpayer derivative action, appellants never had a duty nor a fair opportunity to establish the existence of material issues of fact regarding that claim. In light of the foregoing, the trial court erred by granting appellees summary judgment with respect to appellants' taxpayer derivative action.
 {¶ 42} Appellant's fourth assignment of error is sustained.
 {¶ 43} The trial court's judgment is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
VALEN, P.J., and YOUNG, J., concur.
[1] Webster's defines a "sexton" as "a church custodian charged with keeping the church and parish buildings prepared for meetings, caring for church equipment, and performing related minor duties." Webster's Third New International Dictionary (1993) 2082. Presumably, a cemetery's sexton performs similar duties. In any event, a more precise definition of the term is not required for our purposes here.
[2] The deed given to the Lanhams incorrectly showed that they had purchased Lot No. 233, when, in fact, they had purchased Lot No. 234. In June 1985, the Lanhams relinquished their rights in Lot No. 233, and received a new deed for Lot No. 234.
[3] R.C. 2909.05(C) and (D) essentially prohibit vandalism of a cemetery, including its burial lots, graves and grave markers.
[4] While appellants tried to amend their complaint to include a breach of contract claim, they only did so after the trial court had already rendered summary judgment in appellees' favor. The trial court overruled appellants' motion, and appellants, with good reason, have not raised an assignment of error regarding that decision.